IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 00-20408

UNITED STATES OF AMERICA

                                                  Plaintiff-Appellee

VERSUS

JUAN ANTONIO YERA

                                                  Defendant-Appellant

Appeal from the United States District Court
For the Southern District of Texas
H-00-CR-234

June 25, 2001

Before HIGGINBOTHAM and BENAVIDES, Circuit Judges, and DUPLANTIER,* District Judge

DUPLANTIER, District Judge:**

        Juan Antonio Yera appeals his conviction and sentence on one count of aiding and

abetting in the possession of 500 grams or more of a mixture and substance containing a detectable

---

        * District Judge of the Eastern District of Louisiana, sitting by designation.

        **Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

amount of cocaine with intent to distribute, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii). For the reasons that follow we affirm defendant's conviction but conclude that the district judge incorrectly calculated defendant's criminal history score. Accordingly, we reverse defendant's sentence and remand for resentencing.

Pursuant to a New Jersey warrant, DEA agents in Houston, Texas arrested Angel Cardonas; he cooperated with the DEA agents and identified Willie Lahera as his cocaine supplier. Shortly after Cardonas identified Lahera, a Fort Bend County deputy stopped Lahera, who immediately began cooperating with the DEA agents. Lahera identified Alexander Vivot as his source of cocaine. Working with the DEA agents, Lahera phoned Vivot seeking to purchase cocaine. Vivot made the arrangements to have the cocaine delivered to his home. Defendant Juan Yera and Barbara Rodriguez delivered the cocaine to Vivot's house.

In an unmarked vehicle, DEA agents transported Lahera to Vivot's neighborhood; Lahera identified Yera and Rodriguez when they arrived at Vivot's house. After Yera and Rodriguez arrived at Vivot's home, Lahera called Vivot and cancelled the cocaine order. Shortly after Lahera cancelled the order, Yera and Rodriguez left Vivot's house and drove away. Thereafter police stopped the vehicle Yera was driving and in which Rodriguez was a passenger. Yera consented to a search of the vehicle; law enforcement officers found a digital scale in the glove compartment. Rodriguez consented to a search of her purse, where DEA agents found two large plastic bags containing 1.4 kilograms of cocaine and a plastic bag containing a small amount of cocaine. Yera, Rodriguez, and Vivot were arrested; each was indicted on one count of aiding and abetting in the possession of 500 grams or more of a mixture and substance containing a detectable amount of cocaine with intent to distribute, in violation of 18 U.S.C. § 2 and 21 U.S.S. §§ 841(a)(1), (b)(1)(B)(ii).

2

Vivot and Rodriguez pleaded guilty to the indictment. Yera elected to proceed to trial. On the second day of the trial Yera accepted the government's offer to plead guilty pursuant to Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure to the single count of the indictment and be sentenced at a maximum offense level of 28. The government also agreed not to oppose a two level reduction for acceptance of responsibility if the probation officer recommended such a reduction. The district judge accepted the guilty plea and declared a mistrial. However, she declined to accept the plea agreement until she reviewed the presentence report, and she advised the defendant that if she refused to accept the plea agreement she would permit him to withdraw his guilty plea. Because the presentence report indicated a base offense level of 30, the district judge refused to accept the plea agreement.

Thereafter Yera withdrew his guilty plea. After a second trial, the jury convicted Yera. Accepting the findings in the presentence report of a total offense level of 30 and five criminal history points, the district judge sentenced defendant to a 121 month term of imprisonment, a five year term of supervised release, a $10,000 fine, and a $100 special assessment.

CALCULATION OF CRIMINAL HISTORY SCORE

Yera contends that the district judge improperly calculated his criminal history score by adding four points for two sentences resulting from guilty pleas entered in state court on December 9, 1988. The addition of those four criminal history points elevated defendant's criminal history from category I to category III. Yera urges that pursuant to United States Sentencing Guidelines (U.S.S.G.) §4A1.2(e) those convictions are too remote in time from the instant criminal activity to be factored into the criminal history score.

Before the district court Yera objected to the inclusion of those two prior sentences in the

3

determination of his criminal history score. The district judge overruled defendant's objection.

We review the district court's application of the Sentencing Guidelines *de novo*. United States v. Ocana*, 205 F.3d 585, 588 (5th Cir.), *cert. denied* ____ U.S. ____, 121 S.Ct. 192 (2000).

U.S.S.G. §4A1.2(e) sets out the applicable time periods during which prior sentences may be counted in calculating a defendant's criminal history score. It provides in pertinent part:

> (1) Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.
>
> (2) Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted.
>
> (3) Any prior sentence not within the time periods specified above is not counted.

U.S.S.G. §4A1.2(e).

Some additional background information is necessary to analyze this issue. When Yera pleaded guilty to the two prior state offenses on December 9, 1988, the state judge sentenced him to a two and one half year term of imprisonment for each conviction but stayed the execution of those sentences until January 3, 1989, with the understanding that if Yera self surrendered on January 3, 1989, each sentence would be reduced to one year and one day. Yera self surrendered on January 3, 1989. Thereafter on April 12, 1989, judgments "NUNC PRO TUNC: January 3 1989" were entered mitigating each sentence to one year and one day.

There is no dispute that the April 12 *nunc pro tunc* judgments completely vitiated the sentences of December 9, 1989; the applicable sentences for purposes of determining defendant's

4

criminal history points are the sentences of one year and one day.  Because those sentences are for less than thirteen months, U.S.S.G. § 4A1.2(e)(1) is not applicable, and those sentences are factored into defendant's criminal history score only if they were "imposed within ten years of the defendant's commencement of the instant offense."  U.S.S.G. § 4A1.2(e)(2).

To determine whether the sentences fall within the ten year period of §4A1.2(e)(2), we must determine whether the sentences "were imposed within ten years of the defendant's commencement of the instant offense."  The Sentencing Guidelines do not define when a sentence is "imposed" for purposes of §4A1.2(e)(2); however, they do define "prior sentence" as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendre, for conduct not part of the instant offense."   U.S.S.G. § 4A1.2(a)(1).

The government urges that because defendant's sentences were modified on April 12, 1989 to a year and a day, the ten year period commences April 12, 1989.  However, that analysis ignores the fact that the sentencing court ordered the sentencing modifications to be "*nunc pro tunc* January 3, 1989."  Black's Law Dictionary 1097 (7th ed. 1999) defines . "*nunc pro tunc*" as "now for then," and that is the meaning commonly understood. By virtue of the *nunc pro tunc* judgments of April 12,  each of the prior sentences was "imposed" on January 3, 1989, a date more than ten years prior to the commencement of the instant offense.  Therefore, under § 41A.2(e)(2) no criminal history points should have been assigned as a result of those sentences, and the district judge erred in doing so.

In his brief defendant raised several issues challenging his conviction..  After carefully reviewing the record,  and considering the briefs and oral arguments,  we conclude that those contentions lack merit and require no further discussion.  Accordingly, we affirm defendant's

5

conviction, reverse defendant's sentence and remand this case for resentencing.